UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

SYED MOHAMMAD AFTAB KARIM, MD FAANS

                         Plaintiff,                  **Case No.: 1:17-cv-6888**

       - against –

NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION and LINCOLN HOSPITAL AND
MENTAL HEALTH CENTER, MELISSA P. SCHORI, MD,
individually and in her capacity as Chief Medical Officer of
Lincoln Hospital and Mental Health Center, JAY YELON,
DO, individually and in his capacity as Chairman of Surgery
of Lincoln Hospital and Mental Health Center, ROSS
WILSON, MD, individually and in his capacity as Chief
Medical Officer of New York Health and Hospitals
Corporation, MARK HARTMAN, ESQ., individually and in
his capacity as Deputy Counsel for New York Health and
Hospitals Corporation,

                         Defendants.

------------------------------------------------------------------------x

**<u>VERIFIED COMPLAINT</u>**

**DEMAND FOR JURY TRIAL**

      Dr. Syed Mohammad Aftab Karim, by his attorneys, The Law Offices of Vincent P. White,

alleges upon knowledge to himself and upon information and belief as to all other matters as

follows:

**<u>PRELIMINARY STATEMENT</u>**

      1.    Plaintiff Dr. Syed Mohammad Aftab Karim ("Dr. Karim"), an accomplished

neurosurgeon without blemish on his record, files this complaint alleging that Defendants illegally

and improperly denied him privileges to practice neurosurgery on the basis of his Muslim faith.

Their prolonged failure to issue any decision—spanning three years—coupled with their

indefensible opposition to the challenge of those denial—spanning an additional two years—has

caused extended and extreme harm to Dr. Karim's family, career, and reputation.  Dr. Karim now

requests this Court enforce his civil rights protected by federal, state, and local law.

2.      Plaintiff brings this action pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, the New York State Human Rights Law, N.Y. Exec. Law 290. *et seq.*, and the New York City Human Rights Law, N.Y. Admin Code 8-101, *et seq.* against NEW YORK CITY HEALTH AND HOSPITALS CORPORATION and LINCOLN HOSPITAL AND MENTAL HEALTH CENTER and against the individual defendants listed.

## JURISDICTION & VENUE

3.      This Court has jurisdiction pursuant to 28 U.S.C. §1331 and 1343, as this action involves federal questions regarding deprivation of Dr. Karim's Civil Rights under Title VII and the other aforementioned federal statutes.

4.      The Court has supplemental jurisdiction over Dr. Karim's related claims arising under state and local law pursuant to 28 U.S.C. §1367(a).

5.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## PROCEDURAL REQUIREMENTS

6.      On March 9, 2017, Dr. Karim filed a Verified Complaint with the U.S. Equal Employment Opportunity Commission charging Defendants with unlawful discriminatory employment practices.

7.      On June 7, 2017, the EEOC issued Dr. Karim a notice of right to file suit in federal court for allegations of unlawful discrimination on the basis of religious discrimination as set forth in the Complaint.

8.      Dr. Karim filed this action within 90 days of receipt of the EEOC's decision.

9.      Dr. Karim met any and all other prerequisites to the filing of this suit.

## THE PARTIES

10.      Plaintiff Syed Mohammad Aftab Karim is a Muslim neurosurgeon residing in Westchester County, New York.

11.      New York City Health and Hospitals Corporation ("NYCHHC") governs and operates all New-York-City-owned hospitals with its principal place of business at 125 Worth Street, New York, New York 10013.

12.      Lincoln Hospital and Mental Health Center ("Lincoln") operates a public hospital with its principal place of business at 234 East 149th Street, Bronx, New York 10451.

13.      Melissa Schori, MD served as Lincoln's Chief Medical Officer, with her principal place of business at 234 East 149th Street, Bronx, New York 10451.

14.      Jay Yelon, DO served as Lincoln's Chair of Surgery at all relevant times herein mentioned, with his principal place of business at 234 East 149th Street, Bronx, New York 10451.

15.      Ross Wilson, MD served as NYCHHC's Chief Medical Officer at all relevant times herein mentioned, with his principal place of business at 125 Worth Street, New York, New York 10013.

16.      Mark Hartman, Esq. served as NYCHHC's Deputy Counsel at all relevant times herein mentioned, with his principal place of business at 125 Worth Street, New York, New York 10013.

## FACTUAL ALLEGATIONS

17.     Dr. Karim is an experienced physician, Board-certified in neurosurgery, with an excellent reputation who has been granted clinical privileges by seven other institutions.  He has never been subject to sanctions or any form of discipline at any of these institutions or by any regulatory body during his nearly 15 years of practice and he has never previously been denied privileges by any hospital.  Lincoln (and NYCHHC) is the **only** hospital that has ever denied Dr. Karim privileges. He is licensed to practice Medicine and Surgery in Louisiana, New Jersey, Michigan, California and New York, and his licenses have never been restricted in any way.  Dr. Karim has a clean National Provider Databank Report—a fact of which Defendants have been well-aware for the past five years.  Lincoln's Chief of Neurosurgery Dr. Kaushik Das offered Dr. Karim a contract of employment.  The first step in accepting this offer required Dr. Karim to submit a credentialing application to Lincoln requesting that Lincoln grant him clinical staff privileges as a neurosurgeon.  Dr. Karim submitted this credentialing application to Lincoln in October 2012.

18.     The credentialing process, although exhaustive, almost-always results in a grant of privileges to the applying doctor.  Little did Dr. Karim know that Lincoln would engage in an extended pattern of delay and due process violations in considering his application for the next five years.  Lincoln's by-laws require it to act upon all applications for privileges within 90 days. However, Defendants failed to review Dr. Karim's application within 90 days—taking over 11 months to reach an initial conclusion wholly unsupported by any reliable information.

19.     Dr. Karim submitted forms from Arkansas to Dr. Kaushik Das on January 7, 2013. John Day, Professor and Chairman of Neurosurgery at the University of Arkansas, completed these forms under the penalty of perjury in support of Dr. Karim's application for medical licensure in

California.  The forms were provided to Lincoln through Dr. Das well-before Lincoln formally considered the application.

20.     On February 12, 2013, the Credentials Committee noted that an unidentified male evaluator had recommended Dr. Karim with reservations ("Reservations Evaluator"), and that Dr. Das had spoken to this Reservations Evaluator and informed the Credentials Committee that the information provided was not satisfactory.[1]

21.     Lincoln's Medical Executive Committee (hereinafter, "MEC,") finally met in February 2013—well over 90 days after submission—in Executive Session to identify the issues identified by the Credentials Committee regarding the peer recommendation of Dr. Karim.  The MEC recommended contacting the employer to either clarify the recommendation, re-submit the form, or amend the peer recommendation.  It also noted in the February 14, 2013 MEC minutes that recommendations from Southern Jersey, Arkansas, and Stanford were satisfactory.

22.     Defendants concealed purported evidence (including a questionnaire from Arkansas, a questionnaire completed by the Reservations Evaluator purportedly from Michigan, a South Jersey Hospital questionnaire and the MEC Minutes) until January of 2016 upon which the MEC relied.  Upon disclosure of the MEC Minutes in 2016, it became evident that the source of the Reservations Evaluator was highly suspect because Dr. Karim never had an employer in Michigan—a fact known to Dr. Das, Lincoln, and NYCHHC.[2]

---

[1] Dr. Das informed Dr. Karim via email that an evaluator—purportedly from Michigan—had recommended Dr. Karim "with reservations" and that was "all [he] was aware of was that an attending (not from residency) who put "Recommended with Reservation" and said don't mention my name and did not elaborate and cannot be reached."

[2] Lincoln concealed the purported evidence from Dr. Karim and the Public Health and Health Planning Council (*infra*) under the color of Law. Dr. Karim made repeated requests for the evidence but the Defendants refused citing various provisions of federal, state, and local laws. The so-called evidence was first submitted as part of the NYCHHC Counsel Hartman Affidavit, *after* Dr. Karim had filed his Amended Petition in the New York Supreme Court Action in November 2015.  There was no way for Dr. Karim to confront evidence that had been concealed for over three years. Even after the purported evidence was revealed, the redactions make it impossible to confirm the source or the authenticity of the so-called evidence.  Schori submitted an affidavit in December 2016 documenting her account of

23.     With Dr. Karim still in limbo due to Lincoln's derelictions, Dr. Das withdrew his employment offer to Dr. Karim in March 2013.  Certain members of Lincoln's staff informed Dr. Das that the MEC would not grant privileges, all the while keeping Dr. Karim in the dark. Following Dr. Das' withdrawal of the offer, Lincoln pressured Dr. Karim to either withdraw his application or else risk a formal denial of privileges that would forever remain on his record. Regardless, Dr. Karim persisted, demanding that Lincoln decide his application.

24.     Delaying a further five months, Lincoln issued Dr. Karim a "preliminary" denial of his privileges application.  Without providing any concrete source, Lincoln claimed to "have concerns relating to [Dr. Karim's] ability to work well with subordinates."  Dr. Karim's record is completely devoid of any such accusations.  In response, Dr. Karim presented twelve letters of reference from physicians in support of his application, outlining Dr. Karim's ability to work well as part of a collaborative team with support staff.  Lincoln entirely ignored this overwhelming display of support.

25.     Lincoln also alleged that Dr. Karim failed to provide evidence of malpractice insurance.  This pretextual reason put the cart before the horse.  Upon granting privileges, Dr. Das' contract would have provided coverage to Dr. Karim or he could have obtained coverage himself.

26.     Lincoln "officially" denied Dr. Karim's application on September 30, 2013—over 11 months after submitting his application, in violation of their own procedures.  Defendants again offered the pretextual reasons offered in August 2013.  Dr. Karim formally appealed the MEC's decision, per Lincoln's by-laws. Paradoxically, the denial letter stated that Dr. Karim's professional qualifications revealed no areas of concern.

---

oral conversations with the two evaluators that directly contradicted the written responses of the Reservations Evaluator and the written submissions by John Day of Arkansas.

27.     Lincoln's MEC-selected Review Committee held a formal proceeding in mid-November 2013 regarding the denial of Dr. Karim's credential application denial.  Attorneys represented both Dr. Karim and Lincoln—the latter by NYCHHC counsel.  Lincoln offered paltry "evidence" in support of their denial, including an affirmation by Yelon claiming that Lincoln received "some" evidence from former co-workers regarding Dr. Karim's interpersonal skills (summarizing the aforementioned "efforts" of Schori, themselves contradictory).  Yelon's affirmation contained demonstrably-false statements.[3]  At best, Yelon summarized Schori's hearsay statements in an affirmation while Defendants concealed the actual questionnaires submitted by the facilities in question.

28.     The Review Committee, under the guidance of HHC Counsel, accepted Dr. Karim's letters of reference as equivalent to affidavits.[4]

---

[3] For example, Yelon claimed that the Hospital undertook action pursuant to its Bylaws and Public Health Law, when in fact Lincoln violated both.  Yelon also suggested that the Hospital received information that Dr. Karim demonstrated difficulty working with subordinates, including physician assistants and nurse practitioners.   Lincoln to date has produced no such evidence substantiating that claim.

[4] Those letters contained recommendations from leadership at Michigan, LSU, Stanford, and New Jersey.  The Review Committee also had the forms from Dr. Day, who denied speaking with anyone in New York—revealing that the oral evaluator and written evaluator from Little Rock are in fact two people. Schori clearly ignored Dr. Day's official response, and went on a fishing expedition for anyone that could provide any shred of negative information on Dr. Karim.  She found nothing that could be substantiated or even withstand basic scrutiny.  The Review Committee also reviewed support from Dr. Anil Nanda, Chairman at LSU.  Dr. Nanda , perturbed by the Arkansas situation, stated that there was no need to perpetuate injustice that was totally misplaced in the first place.  Dr. Nanda vowed that this would never happen again. He also pledged to speak to the former Chairman of Neurosurgery when he visited the Brigham in April 2013.  Despite the tragic events in Boston in April 2013, it is Dr. Karim's understanding that Dr. Nanda did give his talk at the Brigham that year based on his communication.  Dr. Nanda continued to remain in touch, sent Dr. Karim emails and letters of support as well as an inscription from his visit to the AlHambra. Dr. Karim last spoke to Dr. Nanda in May 2015 at the sidelines in a neurosurgery meeting where Dr. Karim notified Dr. Nanda of the PHHPC decision. Dr. Nanda congratulated Dr. Karim and updated Dr. Karim that he had interviewed for Chairmanship in Rhode Island and conversation was limited to updates on Dr. Nanda's children and their college and career aspirations. Dr. Nanda also had also been advised on Dr. Karim's visit to the University of Rochester and Dr. Nanda responded with a link to a Boston Globe article. Despite Dr. Nanda's support, University of Rochester Chairman informed Dr. Karim in May 2014 that Dr. Karim's application could not even be considered due to the denial in NY and lapse in practice. This communication from the University of Rochester demonstrated that Lincoln and NYCHHC were continuing to harm Dr. Karim's career, reputation and livelihood with the delays and illegal denial.

29.     Lincoln then delayed another four months—to mid-March 2014—to issue a written decision upholding the MEC's denial of privileges.  In a retaliatory move, the Review Committee stated that Dr. Karim was confrontational when in fact Dr. Karim enforced his rights and questioned the process and procedures by which Defendants had illegally denied privileges. Defendants' argument occurred long before the PHHPC officially found the Defendants to be in violation of law.

30.     In response to Lincoln's improper denial, Dr. Karim filed a complaint against Defendants with the Public Health and Health Planning Council ("PHHPC"), together with an Article 78 petition in New York State Supreme Court in July 2014.

31.     In April 2015, PHHPC—the entity providing statutory oversight of NYCHHC and Lincoln—decided that Lincoln's denial of privileges violated New York State law, holding:

> At its meeting on April 16, 2015, the Public Health and Health Planning Council considered he above-referenced complaint alleging Lincoln Medical and Mental Health Center violated New York State Public Health Law 2801-b by denying professional privileges without stating a valid reason.
>
> After reviewing and considering information relevant to this matter, the Public Health and Health Planning Council determined that Lincoln Medical and Mental Health Center's decision to deny privileges was not sufficiently related to standards of patient care or welfare, the objectives of the institution, or the character and competency of the health practitioner, violating New York Public Health Law 2801-b.
>
> The Public Health and Health Planning Council credited the complaint.  Lincoln Medical and Mental Health Center is now directed to review its actions in light of the Council's determination.

Notably, Lincoln concealed information from the PHHPC that supposedly formed the basis for the denial of Dr. Karim's privileges even at this late stage.

32.     Lincoln's MEC "reviewed" Dr. Karim's application on June 15, 2015—without informing Dr. Karim or anyone else.  Completely ignoring the PHHPC's order, the MEC upheld its own decision.[5]  It also inexplicably referred the matter to NYCHHC for further "review."

33.     NYCHHC issued its report four months later on October 9, 2015, signed by Dr. Ross Wilson,[6] Chief Medical Officer of the NYCHHC.   Egregiously, NYCHHC relied upon information that the MEC did not even consider upon its initial February 2013 meeting.  Wilson, in defiance of the PHHPC decision, self-servingly upheld the illegal denial by the June 15, 2015 MEC (which based its denial on Schori's contradictory account of purported oral conversations). Such willful blindness was unreasonable, unjustified and malicious.  NYCHHC's decision finally exhausted Dr. Karim's administrative remedies, leading to the New York State Supreme Court petition described hereafter.

34.     Dr. Karim then amended his petition in New York State Court, seeking to enjoin Defendants into granting him privileges pursuant to New York State law.  Defendants took two bites at the apple attempting to dismiss Dr. Karim's petition without exposing itself to further discovery—which the state court twice struck down.  Defendants each time produced newly-

---

[5] The MEC minutes from the June 15, 2015 Review demonstrate the Defendants made new false allegations based on false information in a desperate attempt to defy the PHHPC decision. The Defendants alleged that Dr. Karim had withdrawn from South Jersey Hospital to avoid disciplinary action based on a South Jersey Hospital Questionnaire purportedly completed in November 2012.  This form with false information existed in Dr. Karim's file without being verified or corrected for over three years.  Despite the fact that Defendants and the PHHPC were given a letter of recommendation from Dr. Kazmi, Dr. Karim's supervisor who practiced with him at South Jersey Hospital, the Defendants engaged in willful and malicious blindness.  Upon information and belief, Schori, who at that time was no longer Lincoln's CMO , came to the June 15, 2015 MEC meeting to advise the MEC on upholding the denial that was deemed illegal by the PHHPC.

[6] Upon information and belief, Ross Wilson MD joined the NYCHHC in 2008 and has served as Chief Medical Officer of NYCHHC since at least 2011.  Upon information and belief, Wilson presided as CMO of HHC where HHC permitted the granting or maintenance of privileges to individuals with significant malpractice history during the five year look-back period. Lincoln's Chair of Surgery also had an adverse patient outcome in 2012 which was purportedly under investigation by the NYS Department of Health.

conjured information upon which it purportedly denied privileges—essentially altering their own narrative each time.

35.     Specifically, NYCHHC Deputy General Counsel Mark Hartman submitted an affidavit in support of the initial summary judgment motion in January 2016 along with exhibits that—for the first time—revealed the purported information upon which Defendants denied Dr. Karim's application.[7]

36.     On two separate occasions, the New York State Supreme Court stated that Defendants failed to provide admissible evidence of negative references justifying its denial of Dr. Karim's application.  In pertinent parts from the November 4, 2016 Decision and Order, Judge Schecter held:

> Defendants have not met their heavy burden of demonstrating they are entitled to summary judgment...Significantly, there is no admissible evidence that Dr. Schori even obtained additional information from evaluators and that information has always been the primary basis for Lincoln's denial of privileges. For example, there is no proof that anyone actually told Dr. Schori that Dr. Karim had issues working with PA's or had a my-way-or-the-highway approach. In fact, there is no admissible evidence of negative references. Nothing in the questionnaire responses alone would support a denial of privileges. The Reservations-Response evaluator recommended that privileges be granted and stated that Dr. Karim had acceptable interpersonal skills, communication skills and professionalism.
>
> ***
>
> Nor is the South Jersey Response sufficient evidence that the denial of privileges was not improper practice…On this record, defendants' relatively-newly-obtained conclusion—that Dr. Karim

---

[7] In his sworn affidavit, Mark Hartman referenced the June 15, 2015 MEC minutes and offered new—yet still demonstrably false—allegations about South Jersey Hospital.  Hartman alleged that Dr. Karim did not list south Jersey Hospital on the CV, yet Hartman's own exhibit with Dr. Karim's CV clearly shows South Jersey Hospital. Hartman also made false allegations that Dr. Karim withdrew from South Jersey Hospital to avoid disciplinary action. South Jersey Hospital has no record of Lincoln's South Jersey Hospital questionnaire.  Normal protocol required Lincoln to verify the information with South Jersey Hospital before making allegations or a denial decision.  Both Dr. Kazmi and South Jersey Hospital submitted letters to Defendants that contradict these allegations.

> must have omitted information from his application, which alone
> justifies denial of privilege—is insufficient and raises questions
> about good faith.
>
> \*\*\*
>
> Defendants, moreover, did not demonstrate that, under the
> circumstances, the lack of malpractice insurance would be a
> sufficient basis for the denial of privileges…Once again, Dr. Karim
> has raised issues about whether denial on this ground was in good
> faith."

In pertinent parts from the June 15, 2017 Decision and Order, Justice Schecter held:

> Without admissible evidence of negative evaluations, defendants
> did not show that the grounds for denial were reasonably related to
> the institutional concerns set forth in the Public Health Law.
>
> \*\*\*
>
> Nor is the court convinced that the Review Committee's assessment
> of Dr. Karim's character is a sufficient basis for the denial of
> privileges.
>
> \*\*\*
>
> In the end, defendants had the burden on summary judgment motion
> and as to the Public-Health law cause of action did not meet it.

37.     Throughout Lincoln's lengthy delay and games from October 2012 through the present, Dr. Karim has been unable to practice neurosurgery.  Lincoln's unjustified denial of privileges continues to prevent his ability to secure employment at other institutions.  Indeed, the Chairman of Neurosurgery at the University of Rochester informed Dr. Karim that his application could not even be considered due to the denial of privileges and the lapse in practice that resulted from Lincoln.

38.     During recent years, newspapers have cited Lincoln and NYCHHC for issues with fatal errors and even faked records.

39.     NYCHHC CEO Ram Raju—who held this position during Dr. Karim's application process—was the subject of a Conflict of Interest Ruling in a physician employment related-matter.

40.     Multiple Muslim individuals have commenced similar discrimination claims against NYCHHC and its constituent hospitals during and prior to the pendency of Dr. Karim's application on October 25, 2012.[8]

41.     Upon information and belief, Dr. Yelon and Dr. Schori were members of the MEC and Hartman served as HHC Counsel.  Wilson, the author of the October 9, 2015 Review Report, served as Senior Vice President and Quality Corporate Chief Medical Officer at NYHHC. Each served in official capacity with regards to being a public official of New York City. These individuals collaboratively engaged in misconduct with intent to deprive Dr. Karim of a benefit through an unauthorized exercise of their official functions, knowing that such act is unauthorized or by refraining from performing a duty that is imposed upon them by law or is clearly inherent in the nature of their office. Hartman, Dr. Wilson, Dr. Schori, and Dr. Yelon used public resources of New York City to engage in discriminatory misconduct against Dr. Karim.

42.     Defendants had no reasonable belief that the denial of privileges was in furtherance of any quality health care.

43.     Defendants' denial of privileges did not occur after a reasonable effort to obtain the facts of this matter.

---

[8] Affidavits by Muslim employees have described serious misconduct at NYCHHC where Muslims have been harassed, subjected to false allegations, questioned on credentials despite demonstrating full qualifications.  A recent case was published online in Newsweek documenting anti-Muslim discrimination at Harlem Hospital, a NYCHHC Hospital. In this particular case, a conflict between two Muslims was exploited where both Muslim careers at NYCHHC were subsequently harmed.

44.     Defendants' denial of privileges did not occur after adequate notice and hearing procedures afforded to Dr. Karim or other such procedures that are fair to Dr. Karim.

45.      Defendants' denial of privileges did not occur with the reasonable belief that it was warranted by the facts known after the reasonable effort to obtain the facts and adequate notice and hearing procedures have been afforded to Dr. Karim.

46.     Defendants' undertook their actions with malice against Dr. Karim.

47.     Defendants acted in bad faith with regards to the review of Dr. Karim's application.

48.     Defendants continue to discriminate against Dr. Karim and violate his Civil Rights to this date.


## FIRST CAUSE OF ACTION AGAINST DEFENDANT
### (DEPRIVATION OF RIGHTS IN VIOLATION OF 42 U.S.C. § 1983)

49.     Dr. Karim repeats and realleges every paragraph above, as if fully set forth herein.

50.     Defendants' repeated denial of Dr. Karim's privileges application occurred under color of state law.

51.     Defendants' actions denied Dr. Karim's right to equal protection and due process under federal, state, and local laws, as protected by 42 U.S.C. §1983.

52.     Defendants' actions were motivated by a discriminatory animus against Muslims.

53.     Defendants continue to discriminate against Dr. Karim and violate his Civil Rights to this date.

54.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of 42 U.S.C. § 1983, Dr. Karim suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and

anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

## SECOND CAUSE OF ACTION AGAINST DEFENDANT
### (CONSPIRACY IN VIOLATION OF 42 U.S.C. § 1985)

55.     Dr. Karim repeats and realleges every paragraph above, as if fully set forth herein.

56.     Defendants Schori Wilson, Hartman, Jay Yelon, and Lincoln and NYCHHC's officers, agents, employees, and/or other representatives engaged in a conspiracy to deprive Dr. Karim of his rights.

57.     Defendants engaged in multiple acts in furtherance of this conspiracy, as enumerated in the above paragraphs and incorporated by reference herein.

58.     Defendants' conspiracy resulted in the deprivation of Dr. Karim's rights, including equal protection and due process, as a citizen of the United States, as protected by 42 U.S.C. § 1985.

59.     Defendants' actions were motivated by a discriminatory animus against Muslims.

60.     Defendants continue to discriminate against Dr. Karim and violate his Civil Rights to this date.

61.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of 42 U.S.C. § 1985, Dr. Karim suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

**THIRD CAUSE OF ACTION AGAINST DEFENDANT**
**(DISCRIMINATION IN VIOLATION OF 42 U.S.C. §2000)**

62.     Dr. Karim repeats and realleges every paragraph above, as if fully set forth herein.

63.     Dr. Karim is a member of a protected class pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2.

64.     Dr. Karim possessed proper qualifications for Defendants' to grant hospital privileges.

65.     Defendants' repeated improper denials of privileges adversely affected Dr. Karim's employment.

66.     The circumstances previously herein set forth give rise to the inference of religious discrimination by Defendants.

67.     Defendants' actions were motivated by a discriminatory animus against Muslims.

68.     Defendants continue to discriminate against Dr. Karim and violate his Civil Rights to this date.

69.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 §703(a), Dr. Karim suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

**FOURTH CAUSE OF ACTION AGAINST DEFENDANT**
**(DISCRIMINATION IN VIOLATION OF N.Y. EXEC. LAW § 296)**

70.     Dr. Karim repeats and realleges every paragraph above, as if fully set forth herein.

71.     Dr. Karim is a member of a protected class pursuant to New York Executive Law § 296.

72.     Dr. Karim possessed proper qualifications for Defendants' to grant hospital privileges.

73.     Defendants' repeated improper denials of privileges adversely affected Dr. Karim's employment.

74.     The circumstances previously herein set forth give rise to the inference of religious discrimination.

75.     Defendants' actions were motivated by a discriminatory animus against Muslims.

76.     Defendants continue to discriminate against Dr. Karim and violate his Civil Rights to this date.

77.     As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of N.Y. Exec. Law §296, Dr. Karim suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.


**FIFTH CAUSE OF ACTION AGAINST DEFENDANT**
**(DISCRIMINATION IN VIOLATION OF N.Y.C. ADMIN. CODE §8-107)**

78.     Dr. Karim repeats and realleges every paragraph above, as if fully set forth herein.

79.     Dr. Karim is a member of a protected class pursuant to New York City Administrative Code § 8-107.

80.     Dr. Karim possessed proper qualifications for Defendants' to grant hospital privileges.

81.    Defendants' repeated improper denials of privileges adversely affected Dr. Karim's employment.

82.    The circumstances previously herein set forth give rise to the inference of religious discrimination.

83.    Defendants' actions were motivated by a discriminatory animus against Muslims.

84.    Defendants continue to discriminate against Dr. Karim and violate his Civil Rights to this date.

85.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of N.Y.C. Admin. Code §8-107, Dr. Karim suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

**WHEREFORE**, Dr. Karim prays that the Court enter judgment in his favor and against Defendants, containing the following relief:

A.    A declaratory judgment that actions, conduct, and practices of Defendants complained of herein violate the laws of the United States and the State and City of New York;

B.    An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.    An award of damages in the amount to be determined at trial, plus prejudgment interest, to compensate Dr. Karim for all monetary and/or economic harm;

D.    An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Dr. Karim for all non-monetary and/or compensatory harm, including but

not limited to, compensation for mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

E.      An award of damages for any and all other monetary/non-monetary losses suffered by Dr. Karim in an amount to be determined at trial, plus prejudgment interest;

F.      An award of punitive damages;

G.      An award of costs that Dr. Karim incurred in this action, as well as Dr. Karim's reasonably attorneys' fees to the fullest extent permitted by law; and

H.      Such other and further relief as the Court may deem just and proper.


Dated: September 11, 2017
       New York, New York


                                        Respectfully submitted,


                                        _____/s/_____
                                        Michael P. Hilferty (MH2205)
                                        The Law Offices of Vincent P. White
                                        *Attorneys for Plaintiff*
                                        *Dr. Syed Mohammad Aftab Karim*
                                        570 Lexington Avenue, 16th Floor
                                        New York, New York 10022
                                        (646) 690-8881

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------x

SYED MOHAMMAD AFTAB KARIM,

                Plaintiff,

      - against –

NEW YORK CITY HEALTH AND HOSPITALS **VERIFICATION**
CORPORATION and LINCOLN HOSPITAL AND
MENTAL HEALTH CENTER, MELISSA P. SCHORI,
MD, individually and in her capacity as Chief Medical
Officer of Lincoln Hospital and Mental Health Center, JAY
YELON, DO, individually and in his capacity as Chairman
of Surgery of Lincoln Hospital and Mental Health Center,
ROSS WILSON, MD, individually and in his capacity as
Chief Medical Officer of New York Health and Hospitals
Corporation, MARK HARTMAN, ESQ., individually and in
his capacity as Deputy Counsel for New York Health and
Hospitals Corporation,

                Defendants.

---------------------------------------------------------------------------x

**Case No.:  1:17-cv-6888**

Pursuant to 28 USC § 1746, I verify under penalty of perjury that the foregoing Complaint is true and correct to my own knowledge, except to those the matters stated on information and belief, and as to those matters, I believe the same to be true.

Executed on September 8, 2017.

Syed Mohammad Aftab Karim