UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SYED MOHAMMAD AFTAB KARIM,

          Plaintiff,

          -against-

NEW YORK CITY HEALTH AND HOSPITALS
CORPORATION, et al.,

          Defendants.
------------------------------------------------------------x

17-CV-6888 (AT) (OTW)

**REPORT AND RECOMMENDATION**

**ONA T. WANG**, **United States Magistrate Judge:**

**TO THE HONORABLE ANALISA TORRES, United States District Judge,**

## I. Introduction

Plaintiff Syed Mohammed Aftab Karim, M.D. ("Plaintiff") brings suit against several defendants based on the denial of his application for medical staff privileges at Lincoln Hospital and Mental Health Center ("Lincoln"), claiming that Lincoln's review of his application failed to comport with due process, violated Defendants' obligation to provide equal protection, and was the product of discriminatory animus. Although Plaintiff's operative Second Amended Complaint has been dismissed in its entirety, this case remains open for resolution of Plaintiff's letter motion requesting leave to file a Third Amended Complaint. For the reasons discussed below, I recommend that Plaintiff's request to amend be DENIED and that the case be closed.

## II. Background

In October 2012, Plaintiff, a neurosurgeon specializing in spine and brain surgery, applied for medical staff and clinical privileges at Lincoln Hospital and Mental Health Center in

New York. (ECF 41 ("SAC"), ¶¶ 2, 10-11).[1] As part of Lincoln's review process, Lincoln's Medical Executive Committee sent out interrogatories to Plaintiff's former places of employment and residency. (SAC ¶ 29). During this process, Dr. Kaushik Das, Lincoln's Chief of Neurosurgery, informed Plaintiff that the Committee had received interrogatory responses which could threaten to derail Plaintiff's application. In an attempt to alleviate the Committee's potential concerns, Plaintiff subsequently submitted statements from former colleagues vouching for his character and competence. (SAC ¶¶ 47, 50).

Defendant New York City Health and Hospitals Corporation, Lincoln's operating agency, notified Plaintiff's attorney on August 8, 2013 that Lincoln intended to deny Plaintiff's application. (SAC ¶ 64). Plaintiff was provided a draft version of the denial decision and told that he could withdraw his application rather than wait to have the denial finalized. *Id*. The draft stated that Plaintiff's application was denied due to negative character references and lack of malpractice insurance coverage. (SAC ¶¶ 66-67). Plaintiff refused to withdraw his application, and on September 30, 2013, the Committee formally denied Plaintiff's application for privileges.

Plaintiff subsequently requested that Lincoln's Review Committee conduct a review of the Executive Committee's decision, and on November 20, 2013, Plaintiff received a hearing at which Lincoln defended its denial by pointing to submitted comments regarding Plaintiff's inability to work well with others. (SAC ¶ 80). On March 13, 2014, the Review Committee affirmed the denial, finding that the decision was supported by sufficient evidence. (SAC ¶ 82).

---

[1] These facts are drawn from Plaintiff's Second Amended Complaint. *See Muto v. CBS Corp.*, 668 F.3d 53, 56 (2d Cir. 2012).

On appeal to the New York Public Health and Health Planning Council ("PHHPC"), Plaintiff argued that the denial decision was erroneous because there was abundant evidence contradicting the finding that he had difficulty in team settings. (SAC ¶ 96). The PHHPC agreed that the denial lacked a valid basis, and Lincoln's Executive Committee was forced to reconsider Plaintiff's application. (SAC ¶ 98).

Upon reconsideration, Lincoln's Executive Committee again denied Plaintiff's application, citing to its earlier evidence and noting that Plaintiff faced disciplinary issues during his tenure at a New Jersey hospital. (SAC ¶¶ 102-03). After the Review Committee again affirmed the Executive Committee's decision, Plaintiff turned to his previously-stayed action in New York Supreme Court, seeking an injunction to require that privileges be granted. (SAC ¶ 110). Plaintiff further filed suit in this Court on September 11, 2017, alleging that the denial of his application ultimately stemmed from a lack of due process and animosity towards, *inter alia*, his religion, ethnicity, and national origin. (*E.g.,* SAC ¶¶ 128, 133). Defendants subsequently filed a motion to dismiss Plaintiffs' Second Amended Complaint, which included a due process claim and equal protection claim under 42 U.S.C. §1983, as well as a discrimination claim under the New York City Human Rights Law ("NYCHRL").[2]

On March 6, 2019, Judge Torres granted Defendants' Rule 12(b)(6) motion to dismiss the complaint in its entirety. (ECF 104). In the opinion, Judge Torres found that Plaintiff lacked a property or liberty interest in medical staff privileges and failed to allege sufficient support to infer discriminatory intent or unequal treatment. *Id*. This case remains open, however, for

---

[2] As noted in Judge Torres's March 6, 2019 Order, Plaintiff voluntarily withdrew his other claims asserted in the Second Amended Complaint. Accordingly, those claims (42 U.S.C. §1981 discrimination, tortious interference with prospective contractual relations, and 42 U.S.C. §1983 due process as against Dr. Yelon) are not listed in Plaintiff's proposed Third Amended Complaint.

3

resolution of the Motion to Amend, ECF 100. *Id*. at 14.

Plaintiff requests leave to file a Third Amended Complaint to add new facts gleaned from discovery, arguing that he only seeks to "supplement the factual presentation" and is not altering his legal claims. (ECF 100). Defendants oppose the request, pointing out that amendment is futile because the proposed complaint suffers from the same defects as the prior now-dismissed Second Amended Complaint. *Id*.

III. **Discussion**

A. **Legal Standard**

If it is after the deadline to amend the complaint as a matter of course, a party may only amend a complaint with the "opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Although the Court should "freely give leave when justice so requires," Fed. R. Civ. P. 15(a), whether to grant the opportunity to file an amended complaint is within the discretion of the federal district court. *Foman v. Davis*, 371 U.S. 178, 182 (1962). A district court may deny leave to amend for reasons such as undue delay, bad faith, repeated failure to cure deficiencies in prior amendments, or futility. *Id.; accord State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). An amendment is considered futile where the proposed amendments "could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of North Hempstead Bd. of Zoning* Appeals, 282 F.3d 83, 88 (2d Cir. 2002); *see also Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001). As a result, leave to amend should be denied as futile where the proposed amended complaint fails to state sufficient facts "to state a claim to relief that is plausible on its face." *See generally Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

4

**B. Analysis**

Leave to amend should only be granted here if Plaintiff alleges new facts such that the previously-dismissed claims are now sufficiently pleaded to withstand another Rule 12(b)(6) motion. As Plaintiff admits, the proposed Third Amended Complaint contains no new causes of action. (ECF 100 at 4). Therefore, in light of Judge Torres's dismissal of the claims, the proposed new factual allegations[3] must cure the previously-pleaded claims' deficiencies, and not merely "reiterate and embroider the claims." *Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC.*, 152 F.R.D. 18, 30-31 (S.D.N.Y. 1993) (quoting *Coleman v. Ramada Hotel Operating Co.,* 933 F.2d 470, 473 (7th Cir. 1991)). Otherwise, Plaintiff's proposed Third Amended Complaint would be dismissed for the same reasons explained in the March 6, 2019 Order, rendering such an amendment futile.

1. Due Process Claim: Property Interest

Plaintiff has not pleaded any new facts to cure his due process claim as relates to an alleged deprivation of a property interest. In dismissing the claim, Judge Torres concluded that Plaintiff alleged no specific property interest of which he was deprived. Neither New York law nor Lincoln's bylaws entitles Plaintiff to have his application granted. (ECF 104 at 6-7). Rather, Plaintiff only had the right to apply. *Id*. Similarly, participating in an application process may not be considered a property interest. *Id*. at 8 (citing *N.Y. State Nat'l Org. for Women v. Pataki*, 261 F.3d 156, 164 (2d Cir. 2001)).

In the proposed amended complaint, Plaintiff does not provide any new facts showing

---

[3] The Court examined both Plaintiff's highlighted paragraph numbers of new facts, ECF 100, as well as its own redline of differences from the Second Amended Complaint.

how Plaintiff acquired a property interest such that he was entitled to having his application granted. Plaintiff's additional facts related to due process pertain to his complaint that Defendants did not provide an adequate opportunity for him to view and respond to the negative evidence against him. (*E.g.*, ECF 100, Third Amended Complaint ("TAC"), ¶¶ 51, 54, 105, 180). However, this goes to the same lack of "adequate notice and a meaningful opportunity to be heard" argument that Judge Torres already found to be insufficient. (ECF 104 at 6). Plaintiff provides no new facts to show that he had a right to having his application granted. Therefore, Plaintiff's due process claim as relates to a potential property interest would still be dismissed, and his proposed amendment would be futile.

2. <u>Due Process Claim: Liberty Interest</u>

Nor has Plaintiff pleaded any new facts as relates to a potential deprived liberty interest. As noted by Judge Torres's opinion, a deprivation of liberty interest claim must include a publicly-made stigmatizing statement and evidence that the stigmatizing statements relate to deprivation of a tangible liberty interest, e.g. termination of employment. (ECF 104 at 9-10). Plaintiff now proposes to add allegations that withdrawal of his application would be "stigmatic" and that "MEC members mocked, disparaged, and made personal attacks" on him. (TAC ¶¶ 94, 162(d)). However, the allegation of the stigma of withdrawal is irrelevant to this claim because Plaintiff did not actually withdraw his application, so any potential stigma from that act is hypothetical. As to the alleged disparagement, Plaintiff does not allege that the negative comments were ever made public or that such statements were false. *See Velez v. Levy*, 401 F.3d 75, 87-88 (2d Cir. 2005). Even more dispositive is Plaintiff's failure to allege any liberty interest that was affected by the negative statements. *See Leon v. Rockland Psychiatric*

6

*Center*, 232 F. Supp. 3d 420, 435 (S.D.N.Y. 2017) (concluding denial of application is unrelated to liberty interest when applicant is still free to apply to other jobs). Accordingly, Plaintiff's new factual allegations do not remedy the fatal deficiencies in his due process claim as relates to a potential liberty interest.

      3. Equal Protection Claim

Similarly, Plaintiff alleges no new facts that would rehabilitate his §1983 equal protection claim. Plaintiff initially alleged in the Second Amended Complaint that Lincoln promptly grants privileges to non-Muslim and non-Indian physicians, SAC ¶ 119, and that Dr. Jay Yelon received more meaningful due process when he allegedly injured a patient during a tracheotomy, SAC ¶ 121. Judge Torres found those allegations to be insufficient because (1) Plaintiff's allegations regarding non-Muslim applicants were only based on "information and belief" without any basis for such belief and (2) Dr. Yelon is not an appropriate comparator to Plaintiff as Dr. Yelon was not only already employed by Lincoln, but was its Chief of Surgery.

Neither of these two rationales for dismissing Plaintiff's equal protection claim are disturbed by Plaintiff's proposed new allegations. In the proposed Third Amended Complaint, Plaintiff repeats his "on information and belief" allegation about non-Muslim applicants being granted privileges and non-Muslim physicians not being terminated despite having negative reviews. (TAC ¶¶ 181-82). He then expands his allegation to allege that "one or more" non-Muslim physicians have "been granted or maintained . . . privileges" despite having malpractice settlements, negative reviews, or deficient interpersonal skills. (TAC ¶ 182). This still fails to allege facts regarding a specific comparator who, like Plaintiff, applied for privileges yet had a blemished record. *See Lanning v. City of Great Falls*, 908 F.3d 19, 29 (2d Cir. 2018) (rejecting

7

equal protection claim where only conclusory allegations as to existence of comparator).

Likewise, Plaintiff still fails to show how Dr. Yelon is a proper comparator. Although Plaintiff adds the allegation that Dr. Yelon is non-Muslim, TAC ¶ 186, as Judge Torres notes, Dr. Yelon is already employed by Lincoln and thus is not a similarly-situated applicant as Plaintiff. (ECF 104 at 12). For the same reasons, Plaintiff's proposed additional allegations of other non-Muslim surgeons at Lincoln who committed errors or acted unprofessionally are also not appropriate comparators as they are not applicants but physicians who already have privileges. (*See* TAC ¶187, 191). Accordingly, Plaintiff's proposed new allegations would not save his equal protection claim from dismissal.

### 4. Discrimination Claim

Lastly, Plaintiff's NYCHRL discrimination claims are not aided by the proposed new factual allegations. Regarding the NYCHRL discrimination claim, Judge Torres found that Plaintiff failed to allege either that he received unequal treatment or that a discriminatory motive drove the unequal treatment. (ECF 104 at 13-14). As discussed above, Plaintiff still fails to allege facts demonstrating that non-Muslim applicants were treated differently from him in the application process. Further, Plaintiff pleads no facts regarding a discriminatory motive by any of the defendants in denying his application for privileges.

NYCHRL §8-107(a) prohibits refusals to hire "because of" the applicant's race, creed, or national origin. In addition to Plaintiff's conclusory allegations regarding differential treatment of non-Muslims, Plaintiff adds the new allegation that "[e]ach defendant acted adversely as described above to [Plaintiff] at least in part because of his national origin, religion, ancestry, or ethnicity." (TAC ¶ 193). Outside the conclusory repetition of the elements in the "Claims for

8

Relief" section, this conclusory allegation is the only statement in the entire proposed amended complaint in which Plaintiff ascribes any discriminatory animus to Defendants. Plaintiff makes no allegation that any defendant mentioned national origin, religion, ancestry, or ethnicity as a reason for denial of Plaintiff's application. Nor does Plaintiff plead any specific facts showing that Defendants cared about Plaintiff's national origin, religion, ancestry, or ethnicity. Plaintiff may not rely on a conclusory *ipse dixit* allegation about Defendants' motives without supporting facts. *See Twombly*, 550 U.S. at 555 (2007) ("a formulaic recitation of the elements of a cause of action will not do"). Accordingly, Plaintiff's NYCHRL discrimination claim would still be dismissed for the same reasons listed in Judge Torres's prior opinion.

IV. **Conclusion**

Plaintiff has failed to demonstrate how any of the new proposed factual allegations would alter Judge Torres's analysis on whether Plaintiff's claims should be dismissed. Based on Plaintiff's pleaded claims, he must allege facts to satisfy the elements of §1983 due process, §1983 equal protection, and NYCHRL discrimination. As Judge Torres pointed out, Plaintiff's complaint therefore requires non-conclusory factual allegations in relation to (1) deprivation of a liberty or property interest, (2) unequal treatment as compared to similarly-situated applicants, and (3) a discriminatory motive on behalf of Defendants. Plaintiff's proposed new facts instead can only be read as furthering Plaintiff's assertion that he was not afforded a fair opportunity to present his case for staff privileges. A mere assertion of unfairness, however much justified, cannot alone support any of Plaintiff's pleaded claims. Even reading the facts in the most sympathetic light to Plaintiff, none of the new allegations can create a reasonable inference as to any of the above three elements.

Permitting Plaintiff to file the proposed amended complaint would only subject the new complaint to the same fate as the Second Amended Complaint. Thus, amendment would be futile, and accordingly, I recommend that Plaintiff's letter motion to amend be DENIED.

V. **Objections**

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). A party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be addressed to the Honorable Analisa Torres, United States District Judge. Any requests for an extension of time for filing objections must be directed to Judge Torres.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS <u>WILL</u> RESULT IN A WAIVER OF OBJECTIONS AND <u>WILL</u> PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Respectfully submitted,

*s/ Ona T. Wang*

Dated: March 25, 2019  **Ona T. Wang**
New York, New York  United States Magistrate Judge