UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SYED MOHAMMAD AFTAB KARIM, MD, FAANS,

                    Plaintiff,

-against-

NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, LINCOLN HOSPITAL AND MENTAL HEALTH CENTER, MELISSA P. SCHORI, MD, individually and in her capacity as Chief Medical Officer of Lincoln Hospital and Mental Health Center, JAY YELON, DO, individually and in his capacity as Chairman of Surgery of Lincoln Hospital and Mental Health Center, ROSS WILSON, MD, individually and in his capacity as Chief Medical Officer of New York City Health and Hospitals Corporation, and MARK HARTMAN, ESQ., individually and in his capacity as Deputy Counsel for New York City Health and Hospitals Corporation,

                    Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _6/4/2020_

17 Civ. 6888 (AT) (OTW)

**ORDER ADOPTING REPORT AND RECOMMENDATION**

ANALISA TORRES, United States District Judge:

    This lawsuit arises out of Lincoln Hospital and Mental Health Center's ("Lincoln Hospital") denial of Plaintiff, Syed Mohammad Aftab Karim, M.D.'s, application for clinical privileges. Plaintiff brings this action against institutional defendants Lincoln Hospital and the New York City Health and Hospitals Corporation ("HHC"), a public corporation that operates Lincoln Hospital (collectively, "Institutional Defendants"); and individual defendants Melissa P. Schori, M.D., Chief Medical Officer of Lincoln Hospital, Jay Yelon, D.O., Chairman of Surgery of Lincoln Hospital, Ross Wilson, M.D., Chief Medical Officer of HHC, and Mark Hartman, Esq., Deputy Counsel for HHC. Second Amended Complaint ("SAC") ¶¶ 9–15, ECF No. 41.

    On May 1, 2018, the Court referred general pretrial matters in this case to the Honorable Ona T. Wang. ECF No. 43. By letter dated December 20, 2018, Plaintiff sought leave from

Judge Wang to file a third amended complaint ("TAC"). Pl. Letter at 4–6, ECF No. 100; *see also* Proposed TAC ¶¶ 194–208, ECF No. 100-1. On March 6, 2019, while Plaintiff's request was pending, this Court granted Defendants' motion to dismiss the SAC. March 6 Order, ECF No. 104. On March 25, 2019, Judge Wang issued a Report and Recommendation (the "R&R") recommending that the motion for leave to file the TAC be denied, because such amendment would be futile. R&R at 10, ECF No. 106.

Before the Court is the R&R, to which Plaintiff filed timely objections. *See* Pl. Obj., ECF No. 111. For the reasons stated below, Plaintiff's objections are OVERRULED, and the Court ADOPTS the R&R in its entirety.

## BACKGROUND[1]

The following facts are taken from the SAC, which the Court accepts as true for purposes of considering Plaintiff's motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). Plaintiff, a neurosurgeon, is a citizen of the United States, and was "born in India of Indian ancestry," and "presents as Indian in ethnicity and appearance." SAC ¶¶ 1, 9. Plaintiff is also Muslim. *Id.* ¶ 9. In 2012, nonparty Westchester Neurological and Spine, PC ("Westchester Neurological") offered Plaintiff a job on the condition that he obtain clinical privileges at Lincoln Hospital. *Id.* ¶ 24. In October 2012, Plaintiff applied for privileges, and Lincoln Hospital sent queries about him to institutions at which he had worked or studied. *Id.* ¶¶ 24, 29–50. All of the responses Lincoln Hospital received were positive, *id.* ¶ 29, except for two: first, a response from an individual at a facility in Michigan (whose identity was not disclosed to

---

[1] The Court presumes familiarity with the facts, which are set forth in the R&R, and, therefore, only briefly summarizes them here. *See* R&R at 1–4. The summary of facts is drawn from the SAC. Where relevant, the Court addresses the additional allegations Plaintiff seeks leave to file in the TAC.

2

Plaintiff) that stated that he or she recommended Plaintiff "with reservations" (without elaboration), *id.* ¶¶ 30–36; and second, a response from the University of Arkansas, where Plaintiff had worked in a post-graduate residency program, that stated that the reviewer would "not recommend" Plaintiff because he or she had "insufficient knowledge of this candidate to make a recommendation," *id.* ¶¶ 37–40.

In March 2013, Dr. Yelon, Chairman of Lincoln Hospital's Surgery Department, spoke with Plaintiff and suggested that he withdraw his application, implying that Plaintiff would be denied privileges if he did not withdraw. *Id.* ¶¶ 60–61. Meanwhile, Westchester Neurological had withdrawn its job offer to Plaintiff because of the delay in obtaining privileges. *Id.* ¶ 58. In August 2013, HHC provided a draft denial letter to Plaintiff, and offered him the opportunity to withdraw his application. *Id.* ¶ 64. The letter stated that the primary reason for denial was that "based on the assessments of individuals at other facilities, concerns did emerge relating to [Plaintiff's] ability to work well with subordinates as part of a multi-disciplinary team," as well as that Plaintiff had not presented evidence of medical malpractice coverage at the time of his application. *Id.* ¶¶ 66–67.

In September 2013, for the same reasons, Lincoln Hospital's Medical Executive Committee ("MEC") formally denied Plaintiff's application for clinical privileges. *Id.* ¶¶ 73–77. In November 2013, Plaintiff appealed the denial to the MEC Review Committee, which upheld MEC's decision. *Id.* ¶¶ 79–82. Plaintiff then appealed the denial to the New York Public Health and Health Planning Council ("PHHPC"), which, in April 2015, found that Lincoln Hospital's "decision to deny privileges was not sufficiently related to standards of patient care or welfare, the objectives of the institution, or the character and competency of the health practitioner," thus

violating New York Public Health Law § 2801-b, and instructed Lincoln Hospital "to review its actions in light of [the PHHPC's] determination." *Id.* ¶¶ 95–100.

In June 2015, the MEC again denied privileges to Plaintiff, for the same reasons that supported its original determination and because of an additional response it had received from a hospital in New Jersey where Plaintiff had previously worked, which indicated that Plaintiff had resigned to avoid the imposition of disciplinary measures. *Id.* ¶¶ 102–105. Lincoln Hospital referred the denial to HHC, and in October 2015, Ross Wilson, M.D., the Chief Medical Officer of HHC and acting as the designee of HHC's President, specifically disagreed with the PHHPC's determination, and reinstated the first MEC decision upholding the denial of privileges. *Id.* ¶ 106.[2]

In July 2014, Plaintiff sought review of the denial in an Article 78 proceeding in Supreme Court, New York County, where Defendants moved for summary judgment. *Id.* ¶ 110. The court denied the motion, *id.*, but in October 2018, the Appellate Division, First Department reversed and granted Defendants' motion, holding that they "established prima facie that the decision to deny [P]laintiff physician professional privileges at Lincoln Hospital was made in good faith and on reasonable grounds," and that "[t]he decision was based on admissible evidence of [P]laintiff's poor interpersonal skills and difficulties in working with subordinates, which are reasonably related to the statutory standards of 'patient care, patient welfare, the objectives of the institution or the character or competency of the applicant.'" *Karim v. Raju*, 2018 N.Y. Slip Op. 06864 (1st Dep't Oct. 16, 2018) (citing N.Y. Pub. Health Law § 2801-b(1)), ECF No. 85-1. On September 12, 2019, the New York Court of Appeals denied Plaintiff's

---

[2] The complaint does not explain why MEC's first denial was appealed to the MEC Review Committee and then to PHHPC, while the second denial was referred to HHC.

4

motion for leave to appeal the Appellate Division's decision. *Karim v. Raju*, 132 N.E.3d 647 (2019), ECF No. 116-1.

Plaintiff asserts the following causes of action: (1) 42 U.S.C. § 1983 claim for denial of due process against Defendants; (2) 42 U.S.C. § 1983 claim of discrimination in violation of the Equal Protection Clause against Defendants except defendant Yelon; and (3) violations of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(1)(a), against the Institutional Defendants. *See* SAC ¶¶ 122–146; Proposed TAC ¶¶ 194–208; *see also* R&R at 3 n.2.

## DISCUSSION

I. <u>Standard of Review</u>

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a party makes specific objections, the court reviews *de novo* those portions of the report and recommendation that have been properly objected to. *Id.*; Fed. R. Civ. P. 72(b)(3). However, "when a party makes only conclusory or general objections, or simply reiterates his original arguments," the court reviews the report and recommendation strictly for clear error. *Wallace v. Superintendent of Clinton Corr. Facility*, No. 13 Civ. 3989, 2014 WL 2854631, at *1 (S.D.N.Y. June 20, 2014); *see also Bailey v. U.S. Citizenship & Immigration Serv.*, No. 13 Civ. 1064, 2014 WL 2855041, at *1 (S.D.N.Y. June 20, 2014) ("[O]bjections that are not clearly aimed at particular findings in the [report and recommendation] do not trigger *de novo* review."). An order is clearly erroneous if the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (internal quotation marks and

5

citation omitted).

In addition, "new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." *Razzoli v. Fed. Bureau of Prisons*, No. 12 Civ. 3774, 2014 WL 2440771, at *5 (S.D.N.Y. May 30, 2014). The court may adopt those portions of the report and recommendation to which no objection is made "as long as no clear error is apparent from the face of the record." *Oquendo v. Colvin*, No. 12 Civ. 4527, 2014 WL 4160222, at *2 (S.D.N.Y. Aug. 19, 2014) (internal quotation marks and citation omitted).

  II. Plaintiff's Objections

  A. Procedural Posture

Plaintiff first objects that the "procedural background of this case prevented proper consideration of Plaintiff's claims," because Plaintiff submitted the proposed TAC before this Court issued its ruling on the pending motion to dismiss. Pl. Obj. at 3, 5. Namely, Plaintiff argues that he should be given an opportunity to file a TAC, because he lacked the benefit of knowing the deficiencies the Court identified in granting the motion to dismiss. Pl. Obj. at 5. The Court construes this as a specific objection and reviews the R&R *de novo*. 28 U.S.C. § 636(b)(1).

Plaintiff relies on *Kopchik v. Town of E. Fishkill, New York*, 759 F. App'x 31 (2d Cir. 2018) and *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21 (2d Cir. 2017), but these cases are inapposite. *See* Pl. Obj. at 5. In *Kopchik*, the district court "asked [plaintiff] if he would like to amend his complaint," prior to ruling on a pending motion to dismiss for failure to state a claim, "noting that the [district] court would not expect [plaintiff] to have another opportunity to

6

do so." 759 F. App'x at 38.  The plaintiff declined to amend his complaint, and the district court denied plaintiff leave to file an amended complaint after granting the motion to dismiss, a "procedure" that the Second Circuit deemed "inappropriate," because the plaintiff would best be situated to "replead . . . *after* the district court rules on a motion to dismiss."  *Id.*  The instant case is distinguishable, however, because Plaintiff sought leave to amend while the motion to dismiss was pending.  *See* ECF Nos. 44, 100.  Moreover, Plaintiff has, in his objections before the Court, argued the merits of his proposed pleadings and proposed supplemental pleadings with the benefit of the Court's opinion granting dismissal of the SAC.  *See generally* Pl. Obj.

    Likewise, Plaintiff's reliance on *Cresci* is misplaced, as the district court there dismissed the complaint and, in the same order, denied plaintiff an opportunity to amend his pleadings, despite plaintiff's request made in his opposition to the motion to dismiss that he be allowed the opportunity to do so in the event of an adverse ruling.  693 F. App'x at 25.  No such denial happened here.  Instead, Plaintiff submitted a proposed TAC, and, in his objections to the R&R, briefed and submitted after the resolution of the motion to dismiss, Plaintiff proposed yet additional pleadings that an amended complaint would contain.  *See generally* Pl. Obj.  The rationale underlying *Kopchik* and *Cresci*—that fairness requires giving a plaintiff an opportunity to replead after a motion to dismiss is decided—is not controlling where, as here, Plaintiff has in fact supplemented his request for leave to amend with the benefit of the Court's views as to the shortcomings of the dismissed complaint.

    Accordingly, having conducted *de novo* review of the R&R, the Court OVERRULES Plaintiff's objection that denial of leave to replead is procedurally improper.

B. Futility of Amendment

"[W]here a complaint is dismissed for failure to state a claim on which relief can be granted, permission to file an amended complaint is normally granted, unless an amendment would be futile." *Pena v. Recore*, 12 F. App'x 62, 63 (2d Cir. 2001) (citing Fed. R. Civ. P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962)). A motion to amend is considered futile when it fails to "state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners v. Ikanos Communs, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). A plaintiff is not required to provide "detailed factual allegations," but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

The Court addresses Plaintiff's objections in the order of the claims set forth in the proposed TAC, which are identical to those in the SAC. *See* Pl. Letter at 4 (noting that "[t]he TAC does not add any new cause[s] of action," but supplements the allegations of the preexisting causes of action). Accordingly, the Court addresses the claims in the following order: (1) § 1983 claim for denial of due process; (2) § 1983 claim of discrimination in violation of the Equal Protection Clause; and (3) violations of the NYCHRL. *See* Proposed TAC ¶¶ 194–208.

1. Section 1983 Due Process Claim

The Court dismissed Plaintiff's § 1983 claim for denial of due process because Plaintiff failed to allege a cognizable property interest with which Defendants interfered, March 6 Order at 5–9, and because Plaintiff did not allege that Defendants made stigmatizing statements about him and had, therefore, failed to satisfy the first element of a "stigma-plus" claim to allege interference with a liberty interest, *id.* at 9–10. Judge Wang determined that "Plaintiff has not pleaded any new facts to cure his due process claim as relates to an alleged deprivation of a property interest"; "[n]or has Plaintiff pleaded any new facts as relates to a potential deprived liberty interest." R&R 4, 5. Plaintiff argues that his pleadings are sufficient to state a due process claim. *See* Pl. Obj. at 22–29. The Court construes Plaintiff's arguments as a specific objection, and reviews, *de novo*, the portions of the R&R addressing Plaintiff's § 1983 claim for denial of due process. *See* 28 U.S.C. § 636(b)(1).

The Fourteenth Amendment to the U.S. Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citation omitted).

In the March 6 Order, the Court held that Plaintiff's due process claim failed at the first step, because he had not adequately alleged a protected property or liberty interest. As to the asserted property interest, the Court held that neither state law nor Lincoln Hospital's bylaws created an entitlement to privileges. March 6 Order at 7–9. In a renewed attempt to allege a

9

property interest, Plaintiff argues that the proposed allegation that Defendants "routinely grant privileges" would suffice to establish a protected property interest. Pl. Obj. at 26 (quoting Proposed TAC ¶ 31 (internal quotation marks omitted)). This proposed pleading, however, misses the mark. "[R]outine[]" granting of privileges, *id.*, is not, for instance, an "adopted . . . policy and practice of awarding" privileges codified in internal documents, which the Second Circuit has held is sufficient to allege entitlement in a benefit created by hospital practices. March 6 Order at 8 (quoting *Ezekwo v. N.Y.C. Health and Hosps. Corp.*, 940 F.2d 775, 782–83 (2d. Cir. 1991)). There is no error in the R&R concluding that amendment would be futile in this regard.

Next, the Court held in the March 6 Order that Plaintiff failed to allege a protected liberty interest, because Plaintiff did not allege that Defendants made stigmatizing statements about him. March 6 Order at 10. Again, Plaintiff's proposed amendments do not address this fatal defect. As the Court previously held, Plaintiff's complained-of conduct—the denial of privileges—is an "action[]," not a "statement," and is thus insufficient to state a stigma-plus claim. *Id.* (quoting *O'Connor v. Pierson*, 426 F.3d 187, 195 (2d Cir. 2005) (internal quotation marks omitted)).

The remainder of Plaintiff's objections relitigate points the Court previously rejected in the March 6 Order, for reasons the Court need not repeat here. *See* March 6 Order at 7–9 (holding that Plaintiff had failed to allege a property right interfered with by Defendants); *id.* at 9–10 (holding that Plaintiff had failed to allege a liberty right interfered with by Defendants). The Court finds no error in the R&R's finding that amendment would be futile to salvage Plaintiff's alleged deprivation of a liberty interest without due process.

Accordingly, Plaintiff's objections to the R&R's finding that amendment of the § 1983

10

due process claim would be futile is OVERRULED.

### 2. Section 1983 Equal Protection Claim

The Court dismissed Plaintiff's § 1983 equal protection claim because Plaintiff failed to state a prima facie case of discrimination. March 6 Order at 10–12. Judge Wang found that "[n]either of [the Court's] two rationales for dismissing Plaintiff's equal protection claim are disturbed by Plaintiff's proposed new allegations," because "Plaintiff alleges no new facts that would rehabilitate his § 1983 equal protection claim." R&R at 7. Plaintiff objects and argues that the proposed pleadings suffice to state an equal protection claim. *See* Pl. Obj. at 19–22. Construing Plaintiff's arguments as a specific objection, the Court reviews *de novo* the portion of the R&R addressing Plaintiff's § 1983 claim for denial of due process. *See* 28 U.S.C. § 636(b)(1).

Section 1983 claims of employment discrimination in violation of the Equal Protection Clause are subject to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015). To state a prima facie case of discrimination, Plaintiff must plausibly allege that he (1) "is a member of a protected class," (2) "was qualified" for the position he sought, (3) "suffered an adverse employment action," and (4) "has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. "A showing of disparate treatment—that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group'—is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (citation omitted).

11

In the Second Circuit, "a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss." *E.E.O.C. v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). But a complaint must still "at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible." *Id.* at 254. (internal quotation marks, citation, and alterations omitted). Moreover, "[w]here, as here, plaintiffs are counseled, and the pleadings indicate more-plausible, non-discriminatory explanations for defendants' complained-of actions, a bare allegation of discriminatory animus is not enough to render an equal protection claim plausible." *Kajoshaj v. N.Y.C. Dep't of Educ.*, 543 F. App'x 11, 15–16 (2d Cir. 2013).

Plaintiff, who is Indian and Muslim, argues that he meets the plausibility requirement because no other individual who was Indian-Muslim was granted privileges. *See* Pl. Obj. at 6. But Lincoln's Chair of Neurosurgery, Kaushik Das, M.D., who was born in Calcutta, India, was granted privileges at the hospital. *See* Def. Opp. at 19, ECF No. 114. To be sure, the record does not establish that Dr. Das is, like Plaintiff, both Indian *and* Muslim, but neither Plaintiff's proposed allegations nor objections to the R&R account for Lincoln's grant of privileges to Dr. Das in a manner that would plausibly support Plaintiff's claim of discrimination on the basis of "his ancestry, ethnicity, national origin and religion." Proposed TAC ¶ 200. Instead, Plaintiff repeatedly asserts in a conclusory manner that Defendants' decision to deny Plaintiff privileges was discriminatory, but "naked assertion[s] devoid of further factual enhancement" is insufficient to state a claim. *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted) (alteration in original).

12

Upon review of the proposed pleadings, *see* Proposed TAC; *see also* Pl. Obj. at 19–21 (proposing additional possible amendments not pleaded in the Proposed TAC), the Court finds no error in the R&R's conclusion that amendment would be futile, R&R 7–8, because Plaintiff's proposed pleadings would still fail to "nudge" his claim of discrimination "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Accordingly, Plaintiff's objections to the R&R's finding that amendment of the § 1983 equal protection claim would be futile is OVERRULED.

### 3. NYCHRL Claim

Plaintiff's NYCHRL claim also alleges discrimination on the basis of his ancestry, ethnicity, national origin, and religion. *See* Proposed TAC ¶¶ 204–208. In the March 6 Order, the Court analyzed Plaintiff's NYCHRL claim "separately and independently from any federal law claims," and "broadly in favor of [plaintiff], to the extent that such a construction is reasonably possible." March 6 Order at 13 (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (internal quotation marks omitted)). The Court nevertheless concluded that Plaintiff made "only conclusory allegations" of discrimination. *Id.* at 13–14. In the R&R, Judge Wang found that amendment would be futile, because "Plaintiff still fails to allege facts demonstrating that non-Muslim applicants were treated differently from him in the application process," and because "Plaintiff pleads no facts regarding a discriminatory motive." R&R at 8–9. Plaintiff objects. *See* Pl. Obj. at 11–18. The Court reviews the portion of the R&R objected to *de novo*. *See* 28 U.S.C. § 636(b)(1).

The NYCHRL prohibits an employer from "bar[ring] . . . from employment" any applicant "because of" his "race, creed, [or] national origin." N.Y.C. Admin. Code §8-107(1)(a).

13

"To state a claim for discrimination under the NYCHRL, a plaintiff must only show differential treatment of any degree based on a discriminatory motive." *Gorokhovsky v. N.Y.C. Hous. Auth.*, 552 F. App'x 100, 102 (2d Cir. 2014). Even under this minimal standard, a plaintiff must plausibly allege that he was subjected to unequal treatment *because of* his protected characteristic. *Mihalik*, 715 F.3d at 110; *LaSalle v. City of New York*, No. 13 Civ. 5109, 2015 WL 1442376, at *6 (S.D.N.Y. Mar. 30, 2015). In other words, a complaint must allege facts from which a court can infer that the complained-of conduct "is caused by a discriminatory motive." *Mihalik*, 715 F.3d at 110.

Plaintiff contends discriminatory intent can be inferred, because, among other things, Defendants did not provide Plaintiff access to his file and failed to credit the favorable evidence Plaintiff submitted in support of his appeal of the denial, and because the stated reasons for denying Plaintiff privileges were allegedly false and pretextual. Pl. Obj. 9–10, 17–19. But to glean from these allegations the existence of a discriminatory animus motivating the denial of privileges is a bridge too far. Though pretextual rationales may, with other alleged facts, establish a prima facie case of discrimination, *see, e.g.*, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993), the mere allegation of mendacity or pretext, without more, is insufficient to state a claim. *See Iqbal*, 556 U.S. at 678 (noting that a court is not "bound to accept as true a legal conclusion couched as a factual allegation").

Next, the Court addresses Plaintiff's arguments regarding comparators. Plaintiff argues that the R&R erred in finding Plaintiff's amended pleadings on comparators to be futile in establishing discriminatory intent. *See* Pl. Obj. 12–15. In particular, Plaintiff alleges that other surgeons were granted privileges or had privileges renewed despite having demerits in their

14

applications for privileges, and that this differential treatment suggests discriminatory motive. *See id.* The Court disagrees.

To establish an inference of a discriminatory motive by way of comparators, a plaintiff "must show that he . . . shared sufficient employment characteristics with the comparator so that they could be considered similarly situated in all material respects." *McDowell v. N. Shore-Long Island Jewish Health Sys., Inc.*, 839 F. Supp. 2d 562, 568 (E.D.N.Y. 2012). "[S]imilarly situated in all material respects does not mean all respects generally, but rather sufficiently similar 'to support at least a minimal inference that the difference of treatment may be attributable to discrimination.'" *Id.* at 569 (quoting *McGuinness v. Lincoln Hall,* 263 F.3d 49, 54 (2d Cir. 2001)). "Examples of what constitutes a 'material respect' are holding the same positions of roughly the same rank, and being subject to the same performance review and disciplinary standards." *Id.* (citations omitted).

In the proposed TAC, Plaintiff identifies Jay Yelon, D.O. and Joseph DeMattia, M.D. as potential comparators, as well as unnamed surgeons who Plaintiff alleges "[u]pon information and belief, . . . performed surgery on the wrong site or wrong side of the body," or faced other shortcomings in their applications for privileges. Proposed TAC ¶¶ 181–188, 192. Both Dr. Yelon and Dr. DeMattia, however, were previously conferred privileges, *cf.* Proposed TAC ¶¶ 185–186, 192; Pl. Obj. at 20–21, making them materially dissimilar to Plaintiff for the purpose of establishing an inference of discriminatory intent. *See Bagley v. Yale Univ.*, No. 3:13 Civ. 1890, 2015 WL 8750901, at *4 (D. Conn. Dec. 14, 2015) ("In identifying [plaintiff's] comparators . . . , it is appropriate to distinguish between those . . . who . . . initially applied to obtain [the same employment position] and those who reapplied to retain it. The inherent

15

differences in the processes of appointment and reappointment are apparent . . . . It is the difference, fundamental in human affairs, between the unknown and the known."). As for Plaintiff's unnamed surgeons, who he alleges applied for and obtained privileges anew despite potential demerits, *see* Proposed TAC ¶¶ 181–184, the Court again finds Plaintiff's claim that he was denied privileges because of his race, ethnicity, national origin, or religion to be speculative and conclusory. As other district courts in this circuit have found, plausibility requires more than a bare assertion of discrimination. *See, e.g.*, *Yang v. Dep't of Educ. of the City of New York*, No. 14 Civ. 7037, 2016 WL 4028131, at *7–8 (E.D.N.Y. July 26, 2016) (holding that plaintiff adequately alleged discriminatory motive in a Title VII action where, among other things, the supervisor made derogatory remarks regarding plaintiff's nationality and accent); *McDowell*, 839 F. Supp. 2d at 564, 568–69 (concluding that plaintiff adequately alleged discriminatory intent in an action brought under 42 U.S.C. § 1981 and the New York State Human Rights Laws, where plaintiff identified comparators reporting to the same manager, having the same job title, performing the same job functions, and subject to the same performance standards, and where plaintiff was abruptly discharged after reporting a racist remark by a co-worker and a non-black employee was hired to replace plaintiff). Plaintiff does not propose to plead any additional facts that support a plausible comparator theory. Reviewing *de novo* the R&R's finding that amendment would be futile, the Court finds no error.

Last, the Court also finds Plaintiff's argument that the magistrate judge "thwarted discovery" to be without merit. Pl. Obj. at 19. To the extent Plaintiff disagrees with the magistrate judge's discovery rulings, Plaintiff has waived his objections to those orders. *See Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a

16

magistrate's report operates as a waiver of any further judicial review of the magistrate's decision." (internal citation and quotation omitted)); Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the [magistrate's] order not timely objected to."). In any event, Judge Wang provided ample and repeated opportunities for Plaintiff to seek discoverable information or argue his position to permit additional discovery, even when such requests were possibly untimely. *See generally, e.g.*, ECF No. 101. The Court concludes, therefore, that the denial of further discovery is not grounds to modify or set aside the R&R.

Accordingly, Plaintiff's objections to the R&R's finding that amendment of the NYCHRL claim would be futile is OVERRULED.[3]

## CONCLUSION

The Court has reviewed *de novo* those portions of the R&R to which Plaintiff properly objects and has reviewed the remainder of the R&R for clear error.[4] For the reasons stated above, the Court ADOPTS the R&R in its entirety. Accordingly, Plaintiff's request for leave to file a third amended complaint, ECF No. 100, is DENIED.

The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: June 4, 2020
New York, New York

_____
ANALISA TORRES
United States District Judge

---

[3] Plaintiff raised his objections to the R&R's comparator analysis and finding of no discriminatory motive under the header of the NYCHRL claim only. *See* Pl. Obj. at 11–22. However, to the extent Plaintiff's arguments could be construed as objecting to the R&R's similar findings on Plaintiff's equal protection claim, the Court's analysis regarding discriminatory intent under the NYCHRL would be applicable to its review of the R&R's conclusions on Plaintiff's equal protection claim as well.

[4] To the extent not discussed above, the Court finds the unchallenged portions of the R&R to be free of clear error.

17